O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FRANCIS J. KERRIGAN, an        )   Case No. EDCV 09-02082 DDP (OPx)
individual,                    )
                               )   **ORDER GRANTING IN PART AND**
                Plaintiff,     )   **DENYING IN PART DEFENDANT'S**
                               )   **MOTION FOR SUMMARY JUDGMENT**
      v.                       )
                               )   [Motion filed on 02/25/2011]
BANK OF AMERICAN, a            )
Corporation doing business     )
in California,                 )
                               )
                Defendant.     )
_____)

   This matter comes before the court on Defendant Bank of
America's Motion for Summary Judgment, or in the alternative,
Summary Adjudication of Issues. (Dkt. No. 42.) Plaintiff Francis
J. Kerrigan opposes the motion. Having reviewed the parties papers
and considered the arguments therein, the court GRANTS in part and
DENIES in part Defendant's Motion for Summary Judgment.

**I.   Background**

   In 2002, Plaintiff and his wife, Catherine Kerrigan, purchased
property and a manufactured home at 34261 Tractor Trail, Wildomar,
CA 92595 (the "Property"). (Plaintiff's Memorandum in Opposition
to Motion for Summary Judgment as to Plaintiff's Complaint ("Pl.'s

Supp. Opp'n") 8:6, 6:19.)   At that time, they were advised by their
lender that the home should be in Catherine Kerrigan's name due to
Plaintiff's previous bankruptcy and credit score issues.  (Id.
8:9.)   Accordingly, in February 2002, Plaintiff executed a
quitclaim deed for the Property in favor of his wife, Catherine
Kerrigan. (Id. 8:11.)   The same day, Catherine Kerrigan recorded a
grant deed with Future of Five K, Inc. to Property in her favor as
"a married woman, as her sole and separate property." (Defendant's
Motion For Summary Judgment ("Def.'s Mot."), Grant Deed, Exhibit
A.)[1]  Ms. Kerrigan then executed a deed of trust ("DOT") in the
amount of $170,733 in favor of Accubanc Mortgage. (Id., Deed of
Trust, Exhibit C.)

On February 25, 2004, Ms. Kerrigan executed a DOT in the
amount of $212,135 in favor of Accubanc Mortgage.  (Id., Deed of
Trust, Exhibit D.)  On July 20, 2006, Ms. Kerrigan executed a DOT
in the amount of $250,000 in favor of Chase Bank USA ("Chase DOT").
(Id., Deed of Trust, Exhibit E.)  A reconveyance of the $212,135
Accubanc DOT was recorded on August 14, 2006. (Id., Reconveyance,
Exhibit F.)

On March 20, 2007, Plaintiff and Ms. Kerrigan participated in
a counselling session with an independent Home Equity Mortgage
counselor.  (Def.'s Mot., Exhibit G.)  At that time, Ms. Kerrigan
received a Certificate of Home Equity Mortgage Counselling signed
by Jan Hartwyk of Springboard Non-Profit Consumer Credit
Management, Inc.  (Id.)  Plaintiff, however, was told that because

---

[1]  Plaintiff relies on and makes reference to Defendant's
exhibits and, to the extent that they are undisputed, therefore so
does the court.

2

he was not on the title at the time of the HECM loan, only Ms. Kerrigan could be issued a certificate. (Pl.'s Supp. Opp'n 10:7.) Furthermore, during the reverse mortgage application process, Plaintiff was told that since his name was not on title to the home, he did not need to be listed as a co-borrower on the reverse mortgage application. (Pl.'s Opp'n 3:20.) After the loan application was completed, Plaintiff did not sign the "Notice to Non-Borrowing Spouse or Resident" form describing the consequences to non-borrowing spouses should their borrowing spouse predecease them. (Id., Exhibit G.)

On March 26, 2007, Ms. Kerrigan completed the Residential Loan Application for Reverse Mortgage ("Application"), listing herself as the sole borrower. (Def.'s Mot., Exhibit K.) The same day, Ms. Kerrigan completed the HUD/VA Addendum to Uniform Residential Loan Application ("Addendum"), listing Home Capital Funding ("HCF") as the Lender and Seattle Mortgage Company ("SMC") as the Sponsor. (Pl.'s Supp. Opp'n, Exhibit I.)

The loan that Ms. Kerrigan obtained was a home equity conversion mortgage ("HECM"). She secured the HECM through the Housing and Urban Development's ("HUD") reverse mortgage program for elders. (Pl.'s Opp'n 3:15.) A HECM is insured by the United States government. (Id. 7 n.2.)

On May 9, 2007, Ms. Kerrigan recorded a DOT in favor of HCF ("HCF DOT") paying all amounts due and owing on the Chase DOT. (Def.'s Mot., Exhibit M.) All Truth in Lending Disclosure documents pertaining to the HCF DOT were signed by Ms. Kerrigan on May 2, 2007. (Id., Exhibit P.)

On August 29, 2007, HCF recorded an assignment of the HCF DOT in favor of SMC. (Def.'s Mot., Exhibit X.) On June 13, 2007, SMC sent a letter to Ms. Kerrigan explaining that through its relationship with HCF it would now be servicing her loan. (Id., Exhibit S.) In June 2007, Defendant purchased the SMC reverse mortgage division and sent a letter to Ms. Kerrigan dated June 15, 2007, advising her of the acquisition. (Id., Exhibit T.) After discovering that no assignment of the HCF DOT had been recorded in favor of Defendant, Defendant recorded an assignment of the HCF DOT in its favor on November 20, 2009. (Id., Exhibit BB.)

Ms. Kerrigan died on June 19, 2007, only weeks after the HECM loan was completed. On July 17, 2007, Defendant's default department sent a letter to the Kerrigans' daughter advising her that the loan was due and payable upon Ms. Kerrigan's death. (Id., Exhibit V.) Bank of America's foreclosure trustee ReconTrust Company recorded a notice of default on June 24, 2008. (Id., Exhibit Y.) ReconTrust Company then recorded a notice of trustee's sale for Property on June 16, 2009, (Id., Exhibit Z), and another on October 16, 2009, (Id., Exhibit AA).

On July 20, 2007, Charles E. Clung, Jr., Plaintiff's former attorney, advised in a written letter that Plaintiff should have been informed that the HECM loan would become due and payable in the event that Ms. Kerrigan predeceased Plaintiff. (Def.'s Mot., Exhibit KK.)

Plaintiff now brings suit alleging that the counselor failed to adequately counsel him and Ms. Kerrigan as required by the HUD Housing Counseling Program Handbook (HUD Housing Counseling Program Handbook 7610.1, Chapter 4 - Reverse Mortgage Housing Counseling,

1   Section 4-5) and that the HECM loan should have included Plaintiff
2   as a co-borrower.  (Pl.'s Opp'n 5:3.)

3   **II.   Legal Standard**

4        Summary judgment and summary adjudication are appropriate
5   where "the pleadings, the discovery and disclosure materials on
6   file, and any affidavits show that there is no genuine issue as to
7   any material fact and that the movant is entitled to a judgment as
8   a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v.
9   Catrett, 477 U.S. 317, 324 (1986).  In deciding a motion for
10  summary judgment, the evidence is viewed in the light most
11  favorable to the non-moving party, and all justifiable inferences
12  are to be drawn in its favor.  Anderson v. Liberty Lobby, Inc.,
13  477 U.S. 242, 255 (1986).

14       A genuine issue exists if "the evidence is such that a
15  reasonable jury could return a verdict for the nonmoving party,"
16  and material facts are those "that might affect the outcome of the
17  suit under the governing law."  Id. at 248.  No genuine issue of
18  fact exists "[w]here the record taken as a whole could not lead a
19  rational trier of fact to find for the non-moving party."
20  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
21  587 (1986).

22       It is not enough for a party opposing summary judgment to
23  "rest on mere allegations or denials of his pleadings."  Anderson,
24  477 U.S. at 259. Instead, the nonmoving party must go beyond the
25  pleadings to designate specific facts showing that there is a
26  genuine issue for trial.  Celotex, 477 U.S. at 325.  The "mere
27  existence of a scintilla of evidence" in support of the nonmoving
28  party's claim is insufficient to defeat summary judgment.

1  <u>Anderson</u>, 477 U.S. at 252.  "Credibility determination, the

2  weighing Of the evidence, and the drawing of legitimate inferences

3  from the facts are jury functions, not those of a judge [when he or

4  she] is ruling on a motion for summary judgment."  <u>Id.</u> at 255.

5  **III. Discussion**

6      Plaintiff alleges causes of action for: (1) Reformation of

7  Contract; (2) Breach of Covenant of Good Faith and Fair Dealing;

8  (3) Constructive Fraud; (4) Negligence; (5) Negligent

9  Misrepresentation; (6) Violation of Truth in Lending Act ("TILA");

10  (7) Financial Elder Abuse; (8) Temporary Restraining Order,

11  Preliminary and Permanent Injunction; (9) Declaratory Relief; and

12  (10) Punitive Damages.  The court addresses Plaintiff's claims in

13  turn.  Because material triable issues of fact remain concerning

14  Plaintiff's Reformation of Contract claim, the court denies

15  Defendant's Motion for Summary Judgment as to this claim.  The

16  court grants summary judgment with respect to all other claims.

17      **A.   Reformation of Contract**

18      Plaintiff states it was Ms. Kerrigan's intent at the time of

19  signing the HECM to protect the possession of their home for both

20  of their lifetimes.  Plaintiff alleges that the HECM loan filing

21  requirements, as set forth by HUD Form 1099, imposed on the SMC, as

22  an agent of the HECM lenders, and from whom Defendants obtained the

23  loan, a requirement that Plaintiff be included on the HECM

24  application.  Plaintiff alleges that this result — in order to

25  protect both the Kerrigans in joint and equal lifetime security in

26  their residence — was the intended result of all parties to the

27  HECM. (Pl.'s Opp'n 3:22.)  Plaintiff seeks reformation.

28

1    Defendant contends that Plaintiff is not the borrower or a

2    party to the loan agreement and therefore is not entitled to

3    reformation.  Defendant relies on Mabb v. Merriam, 129 Cal. 663

4    (1900), in support of its argument that reforming the contract so

5    as to add Plaintiff as a named borrower is impermissible because it

6    would result in what would be, in essence, a new contract between

7    different parties.

8    California Civil Code section 3399 articulates when a contract

9    may be revised:

10                When, through fraud or a mutual mistake of the
                 parties, or a mistake of one party, which the other
11               at the time knew or suspected, a written contract
                 does not truly express the intention of the
12               parties, it may be revised on the application of a
                 party aggrieved, so as to express that intention,
13               so far as it can be done without prejudice to
                 rights acquired by third persons, in good faith and
14               for value.

15   An "aggrieved party," for purposes of reformation of a contract, as

16   provided by this section, need not be an original party to the

17   transaction, but merely one who has suffered prejudice or pecuniary

18   loss.  See Watson v. Collins, 204 Cal. App. 2d 27 (1962); see also

19   Shupe v. Nelson, 254 Cal. App. 2d 693, 698 (1967) ("The right to

20   reformation of an instrument is not restricted to the original

21   parties to the transaction.").  Accordingly, although Plaintiff was

22   not a party to the HECM, he may seek reformation.

23   Furthermore, it is settled that "[f]raud in the execution or

24   inducement of a written contract may be shown, and revision of a

25   written contract may be sought where mistake or imperfection of the

26   writing is put in issue by the pleadings." Alameda County Title

27   Ins. Co. v. Panella, 218 Cal. 510, 513 (1933).

28

7

1    Here, Plaintiff offers the Residential Loan Application, among

2 other evidence, in support of his position that the contract did

3 not "truly express the intention of the parties."  The Residential

4 Loan Application for Reverse Mortgages states in relevant part:

5         This application is designed to be completed by the
          applicant(s) with the lender's assistance . . . .
6         Co-borrower information must be provided when a
          person other than the 'Borrower' (including the
7         Borrower's spouse) is a co-owner of the real
          property that will be used as a basis for loan
8         qualification or the Borrower's spouse is not a co-
          owner of the real property that will be used as a
9         basis for loan qualification, but the Borrower
          resides in a community property state.
10
California is a community property state, <u>In re Marriage of</u>
11
<u>Padgett</u>, 172 Cal. App. 4th 830, 852 (2009), and therefore,
12
Plaintiff points out, the application itself considers Plaintiff
13
(i.e. the borrower's spouse) and expressly requires that
14
information about being a co-borrower <u>must</u> be provided to him.
15
Plaintiff alleges that he was not provided with this information.
16
    In addition, the statute which governs HECMs, namely the
17
"Insurance of home equity conversion mortgages for elderly
18
homeowners," 12 U.S.C. 1715z-20(j), whose stated purpose is to
19
"authorize the Secretary to carry out a program of mortgage
20
insurance designed to meet the special needs of elderly homeowners"
21
mandates the following:
22
          The Secretary may not insure a home equity
23        conversion mortgage under this section unless such
          mortgage provides that the homeowner's obligation
24        to satisfy the loan obligation is deferred until
          the homeowner's death, the sale of the home, or the
25        occurrence of other events specified in regulations
          of the Secretary. <u>For purposes of this subsection,</u>
26        <u>the term 'homeowner' includes the spouse of a</u>
          <u>homeowner.</u>
27

28

(emphasis added).  The statute suggests that HECM loans, by default, apply to both spouses and that any reference to homeowner is, again, by default, a reference to the couple.  Therefore, Plaintiff seeks to reform the loan to incorporate himself, a necessary party who was wrongfully omitted, thereby conforming the agreement to the intent of the parties.

Plaintiff points out, and Defendant does not dispute, that both Defendant and Seattle Mortgage Company are Direct Endorsement Lenders with HUD, and the HECM Application lists SMC as the sponsor of the subject loan.  In this capacity, SMC was responsible for meeting the stated requirements of HUD.  Given that the Application was not filled out in its entirety and the certifications required on the Addendum were not accurate, the Application is not in accordance with HUD requirements and the loan should not have been approved.  Defendants argue that even if the loan does not reflect the intent of the parties, reformation is not possible at this late hour.  However, there is at least a factual dispute about whether this is indeed the case.  After a mortgage has been insured, the HUD allows for recasting without HUD approval when "the recasting is limited to the remaining term of the mortgage or to a term extending not more than 10 years beyond the original maturity date and the requirements of 24 CFR 203.614(b)(1) are met[,] the mortgagor does not own the property subject to a mortgage insured by the Secretary; and [] the default was caused by circumstances beyond the control of the mortgagor."  HUD Housing Handbook 4330.1 § 3-1A ("Amendments after the mortgage has been insured").

Here, the court concludes that there is a factual dispute related to the mutual intent of the parties at the time that the

1  subject HECM loan was executed.  In reaching this conclusion, the

2  is mindful that "where reformation of an instrument is under

3  consideration, inquiry to ascertain the true intent of the parties

4  is not only permissible but essential."  First American Title Ins.

5  & Trust Co. v. Cook, 90 Cal. Rptr. 645, (1970).  California Civil

6  Code 340 further instructs that "in revising a written instrument,

7  the Court may inquire what the instrument was intended to mean, and

8  what were intended to be its legal consequences, and is not

9  confined to the inquiry what the language of the instrument was

10 intended to be."

11     The present action concerns an elderly married couple that co-

12 mingled their funds, cohabitated for almost fifty years, and

13 jointly met with lenders to procure the subject HECM – a mortgage

14 loan which is offered and marketed to protect the elderly.  Here,

15 the court is satisfied that there is at least a factual dispute as

16 to whether the SMC erred and Plaintiff and Ms. Kerrigan were not

17 informed when they excluded Plaintiff in the execution of the HECM.

18 The court finds it particularly significant that the statute which

19 governs HECMs expressly requires that under the terms of the HECM,

20 a "homeowner's obligation to satisfy the loan obligation is

21 deferred until the homeowner's death" and that the term "homeowner"

22 "includes the spouse of a homeowner."  12 U.S.C. 1715z-20(j).

23 Under these circumstances, a misunderstanding on the part of Ms.

24 Kerrigan as to the terms of the HECM and whether "homeowner"

25 included Plaintiff was reasonable.

26     In light of the above factual issues raised by Plaintiff,

27 which call into question the intent of the signing parties and

28 raise a triable issue of fact as to whether the subject loan

1    agreement represents the true intent of the parties to the

2    original, the court denies Defendant's request for summary

3    adjudication of this issue.

4         **B.   Breach of the Implied Covenant of Good Faith and Fair
              Dealing; Constructive Fraud**

5         Plaintiff brings a claim for breach of the implied covenant of

6    good faith and fair dealing and for constructive fraud.  In support

7    thereof, Plaintiff alleges that a confidential relationship was

8    established when he and Ms. Kerrigan reposed their trust and

9    confidence in the lender and counsellor as to their integrity and

10   fidelity.  Plaintiff contends that Defendant is liable for the acts

11   of its predecessors and agents who breached the covenant of good

12   faith and fair dealing by wrongfully excluding Plaintiff from the

13   contract at issue and thereby depriving him of the benefits of that

14   contract.  Plaintiff further contends that 12 U.S.C. 1715z-20

15   ("Insurance of Home Equity Conversion Mortgage for Elderly

16   Homeowners") establishes a special relationship between banks

17   participating in the reverse mortgage program and borrowers, as

18   evidenced by the need for counseling and a thorough application

19   process designed to insure that all HECM requirements are met for

20   both spouses.  Plaintiff claims that Bank of America, in accepting

21   the responsibilities of Direct Endorsement Lender under HUD, was

22   responsible for all matters related to the statutes, rules and

23   regulations that form the HECM program for elderly homeowners,

24   including their proper implementation and servicing.

25        As a general rule, a financial institution owes no duty of

26   care to a borrower when the institution's involvement in the loan

27   transaction does not exceed the scope of its conventional role as a

28

1   lender of money.  <u>Wagner v. Benson</u>, 101 Cal. App. 3d 27, 34-35

2   (1980); <u>Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav.</u>

3   <u>& Loan Assn.</u>, 52 Cal. App. 3d 484, 488-89 (1975).  Tort remedies

4   for breach of the implied covenant of good faith and fair dealing

5   are only available where there is a special relationship between

6   the parties.  <u>Wallis v. Superior Court</u>, 160 Cal. App. 3d 1109

7   (1984).  Similarly, constructive fraud usually arises from a breach

8   of duty where a relation of trust and confidence exists.  <u>Barrett</u>

9   <u>v. Bank of America</u>, 183 Cal. App. 3d 1362, 1369 (1986) (citing

10  <u>Darrow v. Robert A. Klein & Co., Inc.</u>, 111 Cal. App. 310, 315-16

11  (1931)).

12       In this case, there was no special or fiduciary relationship

13  between Bank of America and the Kerrigans.  Defendant did not

14  participate in the origination process or closing of the subject

15  loan.  Defendant did not acquire its interest from SMC until after

16  the loan closed, and the Asset Purchase Agreement establishes that

17  Defendant did not assume the purported liability upon which

18  Plaintiff's claims are based.  Accordingly, Defendant is entitled

19  to summary adjudication in its favor on these claims.

20       **C.   Negligence & Negligent Misrepresentation**

21       Plaintiff sets forth a claim of negligence, stemming from the

22  execution of the HECM in May 2007.  Plaintiff's claim, however is

23  time barred.  By his own admission, Plaintiff learned of the facts

24  pertaining to his claim no later than July 20, 2007, when he

25  received a letter from his former attorney advising him that the

26  loan would become due and payable upon Ms. Kerrigan's death and

27  that Plaintiff could not assume the HECM loan.

28

12

1    Under California law, a cause of action for negligence has a
2  two-year statute of limitations.  Cal. Civ. Proc. Code Ann. §
3  335.1.  Because Plaintiff did not file this lawsuit until November
4  6, 2009, over two years after he received the letter from his
5  attorney and over two years from the date of the execution of the
6  HECM, his negligence as well as his negligent misrepresentation
7  claims are time barred.  Defendant is entitled to summary
8  adjudication in its favor on this claim.

9    **D.   Violation of Truth in Lending Act**

10    Plaintiff's Truth in Lending Act claim is also time barred.
11  The Truth in Lending Act requires borrowers to file an action
12  "within one year from the date of the occurrence of the violation."
13  15 U.S.C. 1640(e); <u>Pacific Shore Funding v. Lozo</u>, 138 Cal. App. 4th
14  1342, 1350-51 (2006).  The alleged violation here is the failure to
15  make proper and timely disclosures at least three days before
16  consummation of the transaction, which occurred on May 9, 2007.
17  Under TILA, therefore, Plaintiff's filing deadline was May 9, 2008.
18  Plaintiff did not file his complaint until October 6, 2009.
19  Therefore, Plaintiff's claim for purported TILA violations is time
20  barred without exception.

21    **E.   Financial Elder Abuse**

22    Plaintiff claims that Defendant recklessly, and by oppression
23  and fraud, deprived Plaintiff of his property right and interest in
24  the home, thereby committing financial abuse of an elder.

25    Financial abuse of an elder is defined in California Welfare &
26  Institutions Code section 15610.30:

27    (a) "Financial abuse" of an elder or dependent adult
      occurs when a person or entity does any of the following:
28

13

1          (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

          (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

          (3) Takes, secretes, appropriates, obtains, retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 1575 of the Civil Code.

(b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

(c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

According to Plaintiff, Defendant has taken property for a wrongful use inasmuch as Defendant knew or should have known that its conduct was likely to be harmful to the Plaintiff, an elder under California statute. Specifically, Plaintiff claims to have been falsely led to believe that a HECM loan would protect both he and his wife with safeguards from displacement from their home in their lifetime.

The court, however, is not persuaded that Plaintiff has pleaded or offered facts to support a finding that Defendant wrongfully took property from Plaintiff. First, Plaintiff was not record title owner at the time of the subject loan; he had quit

claimed Property to Ms. Kerrigan, and all prior mortgages
identified Ms. Kerrigan as the sole borrower.    Second, Defendant
properly commenced foreclosure proceedings because, under the terms
of the HECM, the loan became due and payable upon Ms. Kerrigan's
death.   Plaintiff has not alleged that the loan is not in default
or that the foreclosure proceedings are improper.   Because
Plaintiff has offered no evidence that Defendant either exercised
undue influence or is wrongfully taking real property belonging to
Plaintiff, Defendant is entitled to summary judgment in its favor
on this claim.

**F.    Punitive Damages; Injunctive Relief; and Declaratory Relief**

Plaintiff seeks punitive damages in connection with his causes
of action for constructive fraud, TILA violations, and financial
elder abuse.   (Complaint ¶ 77.)   For the reasons stated above,
Defendant is entitled to summary adjudication in Defendant's favor
on these claims.   Therefore, Plaintiff's request for punitive
damages for violations thereof is moot.

Plaintiff also states a claim for declaratory relief.
(Complaint ¶ 37.)   The court may refuse to award declaratory relief
in any case where its declaration or determination is not necessary
or proper at the time under all the circumstances.   Cal Code Civ.
Proc. section 1060; _City of Alturas v. Gloster_, 16 Cal.2d 46, 49
(1940).   The availability of another form of adequate relief may
justify denial of declaratory relief, _C.J.L. Const., Inc. v._
_Universal Plumbing_, 18 Cal. App. 4th 376, 390 (1993), and it is
enough that the complaint alleges facts showing an "actual
controversy" and asks the court to adjudicate the parties' rights

15

and duties.  Olszewski v. Scripps Health, 30 Cal.4th 798, 807 (2003).  Here, because Plaintiff states a valid claim for reformation, Defendant seeks summary denial of Plaintiff's request for declaratory relief.  Because triable issues of fact remain with respect to the reformation claim and Plaintiff's request for declaratory relief concerns related issues, the court declines to exercise its discretion and denies Defendant's motion as to this issue.

The court does, however, grant Defendant's request to strike Plaintiff's claim for injunctive relief.  Injunctive relief is a remedy and not, in itself, a cause of action.  See Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168 (1942).

**IV.  Conclusion**

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: August 12, 2011

DEAN D. PREGERSON
United States District Judge